IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBIN COLE,

    Plaintiff,

    v.

COBB COUNTY SCHOOL DISTRICT,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-3341-TWT

**OPINION AND ORDER**

This case arises under the Americans with Disabilities Act ("ADA"). The Plaintiff Robin Cole – who is currently an employee of the Defendant Cobb County School District – claims that the Defendant unlawfully delayed providing her with a reasonable accommodation for her disability. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 40]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 40] is GRANTED.

**I. Background**

The Plaintiff Robin Cole started the 2012-2013 school year as a teacher at Lost Mountain Middle School after having taken leave to receive mental health treatment

for paranoia.[1] The events giving rise to this litigation began on December 7, 2012, when the Plaintiff had a dispute with her co-teacher Tina Ford.[2] Although the parties contest various details regarding the incident, they agree that it occurred in the middle of a class session, and it concerned certain holiday decorations that Ford was arranging in the classroom.[3] The Defendant alleges that the Plaintiff accused Ford of hiding a voice recorder in a decorative snowman in order to "spy" on the Plaintiff.[4] Conversely, the Plaintiff alleges that she merely got upset at Ford for arranging the holiday decorations while the Plaintiff was teaching.[5] After the dispute, Ford spoke with the school's Assistant Principal, Diane Vance.[6] Ford then sent a statement, via e-mail, to Vance and the school's Principal Candice Wilkes describing her version of the events.[7]

---

[1] Def.'s Statement of Facts ¶¶ 9, 59-59, 65-66.

[2] Id. ¶ 70.

[3] Id.; Pl.'s Statement of Facts ¶ 5.

[4] Def.'s Statement of Facts ¶¶ 70-71.

[5] Pl.'s Statement of Facts ¶¶ 5, 7.

[6] Def.'s Statement of Facts ¶ 74.

[7] Id. ¶ 75.

Wilkes completed an employee incident form,[8] and asked the Plaintiff to meet with a "Prevention Specialist" that worked for the Defendant.[9] The Plaintiff acquiesced, and on December 11, 2012, the Plaintiff and Wilkes met with Jeff Dess, the Prevention Specialist.[10] Dess confirmed that the Plaintiff was exhibiting paranoid behavior,[11] and so the Plaintiff agreed to schedule an appointment with a mental health care provider.[12] Wilkes testified that she then continued to receive complaints indicating that the Plaintiff had been exhibiting paranoid and irrational behavior.[13]

Further, Wilkes and Ford testified that, on January 28, 2013, the Plaintiff and Ford were involved in yet another dispute.[14] On January 29, 2013, Wilkes told the Plaintiff that she had to undergo a fit-for-duty examination with Dr. David Adams,[15] a clinical psychologist hired by the Defendant.[16] Dr. Adams met with the Plaintiff on

---

[8]   Def.'s Statement of Facts ¶ 80.

[9]   Id. ¶ 83.

[10]  Id. ¶ 84.

[11]  Id. ¶ 86.

[12]  Id. ¶ 87.

[13]  Wilkes Aff. ¶ 17.

[14]  Def.'s Statement of Facts ¶¶ 96-101.

[15]  Id. ¶ 104.

[16]  Id. ¶¶ 38, 40.

January 30, 2013.[17] He found that the Plaintiff was consistently harboring delusional beliefs, and that she appeared to be confused and agitated.[18] He expressed that the Plaintiff would be unable to concentrate on her teaching duties, and indicated that she needed to take medical leave to receive treatment.[19] Dr. Adams concluded that the Plaintiff was unfit for duty,[20] and he conveyed this to Roger Bartlett – the Defendant's Benefits Manager[21] – on January 30, 2013.[22] Consequently, the Plaintiff was placed on leave under the Family and Medical Leave Act that day.[23] The next day, the Plaintiff sent an e-mail to Bartlett's office stating, in full: "I need paper work and what I need to do to move schools."[24]

The Plaintiff then received treatment from two other doctors. The Plaintiff began meeting with Dr. Christy Rahn – a clinical psychologist[25] – on February 11,

---

[17]   Id. ¶ 106.

[18]   Id. ¶ 108.

[19]   Id. ¶¶ 110-111.

[20]   Id. ¶ 107.

[21]   Id. ¶ 26.

[22]   Id. ¶ 112.

[23]   Bartlett Aff. ¶ 13.

[24]   Def.'s Statement of Facts ¶ 115; Pl.'s Resp. Br., Ex. 31.

[25]   Def.'s Statement of Facts ¶ 46.

2013. She informed Dr. Rahn that she had been having paranoid thoughts.[26] Additionally, from December 12, 2013 to December 17, 2013, the Plaintiff also received treatment for depression and substance abuse from Dr. Munjal Shroff,[27] a board certified psychiatrist.[28] Dr. Rahn and Dr. Shroff each completed a Release to Work form for the Plaintiff on March 5, 2013 and March 6, 2013, respectively.[29] On March 22, 2013, Bartlett contacted Dr. Adams in order to schedule another fit-for-duty examination for the Plaintiff.[30] The Plaintiff then met with Dr. Adams on April 3, 2013.[31] Dr. Adams concluded that the Plaintiff's condition had not permanently stabilized, and he conveyed this to Bartlett.[32] Consequently, Bartlett did not restore the Plaintiff to her teaching position.[33]

---

[26]   Id. ¶ 134.

[27]   Id. ¶¶ 126-127.

[28]   Id. ¶ 43.

[29]   Id. ¶¶ 131, 138.

[30]   Id. ¶ 148.

[31]   Id. ¶ 149.

[32]   Id. ¶¶ 156-157.

[33]   Id. ¶ 158.

On June 19, 2013, the Plaintiff submitted a Reasonable Accommodation Request form asking for a transfer to a new position in a different school.[34] The Defendant granted her request, and offered her a position as a school counselor at a different school.[35] On June 26, 2013, Dr. Adams conducted another fit-for-duty examination of the Plaintiff[36] and eventually confirmed that she was fit for duty.[37] The Plaintiff then returned to work for the Defendant at the beginning of the 2013-2014 school year. The Plaintiff filed suit, initially asserting claims under the ADA and the Rehabilitation Act based upon the Defendant's decision to place her on leave, its refusal to reinstate her sooner, and its failure to provide her with a reasonable accommodation sooner.[38] The Plaintiff seeks back pay and other damages for the period of time in which she claims she was impermissibly kept from work. The Defendant now moves for summary judgment.

---

[34]  Id. ¶ 167.

[35]  Id. ¶ 171.

[36]  Id. ¶ 173.

[37]  Id. ¶ 174.

[38]  Compl. ¶ 69.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[39] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[40] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[41] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[42] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[43]

## III. Discussion

In her Response Brief, the Plaintiff pursues only a single theory for relief: that the Defendant impermissibly failed to provide her with a reasonable accommodation

---

[39]   FED. R. CIV. P. 56(c).

[40]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[41]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[42]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[43]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

which would have allowed her to continue working in 2013 despite her disability.[44] Under the ADA, it is unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment."[45] According to the ADA, a "qualified individual" is one who "*with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds or desires."[46] Additionally, the ADA defines the phrase "discriminate against a qualified individual on the basis of disability" to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with

---

[44] Pl.'s Resp. Br., at 25-26; Def.'s Reply Br., at 4-5. Although the Plaintiff mentions in passing that the Defendant ought to have restored her to her teaching position in March of 2013, Pl.'s Resp. Br., at 31, it is unclear what precise claim this assertion is made in support of. As noted, the Plaintiff only cites to and discusses the ADA's reasonable accommodation requirement. In fact, in response to the Defendant's claim that it had no discriminatory motive, the Plaintiff simply points out that – unlike with most other ADA claims – there is no scienter element for reasonable accommodation claims. Pl.'s Resp. Br., at 25; see also Howze v. Jefferson Cnty. Comm., for Econ. Opportunity, No. 2:11-CV-52-VEH, 2012 WL 3775871, at *10 n.11 (N.D. Ala. Aug. 28, 2012). Thus, the Court will only assess the Plaintiff's reasonable accommodation claim. Cf. Carson v. Belk, Inc., 537 Fed. Appx. 818, 821 (11th Cir. 2013) ("[T]he plaintiff [must prove] that the defendant *intentionally discriminated against her because of her disability* . . . [the plaintiff here] has not pointed to any evidence . . . from which a jury reasonably could conclude that Belk's stated reason for not allowing her to return to work was pretext for discrimination because of her disability.") (emphasis added).

[45] 42 U.S.C. § 12112(a).

[46] 42 U.S.C. § 12111(8) (emphasis added).

a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[47] Thus, to establish a reasonable accommodation claim under the ADA, the Plaintiff must show that (1) she had a disability, (2) there was a reasonable accommodation which would have allowed her to perform the essential functions of the job, and (3) the Defendant failed to provide her with a reasonable accommodation.[48] If the Plaintiff satisfies the requisite elements, the Defendant then has an opportunity to show that providing a reasonable accommodation would impose an "undue hardship on the operation of [its] business."[49]

Here, the Defendant is entitled to judgment as a matter of law because – based on the evidence in the record – the Plaintiff cannot establish the third element of her claim: that the Defendant failed to provide her with a reasonable accommodation. For employment discrimination claims under both the ADA and the Rehabilitation Act,

---

[47]    42 U.S.C. § 12112(b)(5)(A).

[48]    See Mazzeo v. Color Resolutions Int'l, LLC, 746 F.3d 1264, 1268 (11th Cir. 2014) ("To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability."); Willis v. Conopco, Inc., 108 F.3d 282, 284 (11th Cir. 1997) ("[A] plaintiff must establish that (a) he is handicapped but, (b) with reasonable accommodation (which he must describe), he is able to perform the 'essential functions' of the position he holds or seeks.") (citations omitted).

[49]    42 U.S.C. § 12112(b)(5)(A).

to establish that an employer failed to provide a reasonable accommodation a plaintiff must first show that she made a *specific demand* for an accommodation.[50]

To show that she made such a demand, the Plaintiff references the e-mail she sent to Bartlett's office on January 31, 2013. This e-mail reads, in full: "I need paper work and what I need to do to move schools."[51] This is not a specific demand for a reasonable accommodation. This is simply an information request on how to go about transferring to a different school. And even then, the Plaintiff did not indicate that she wanted a transfer due to her disability. As the Defendant points out, there are many reasons why a teacher may want to transfer. In fact, in her deposition, Cole testified that she wanted to move schools due to personal conflicts:

> Cole: I couldn't work with Ms. Ford. She was sabotaging me.
> Because she would sit in the classroom and e-mail the principal. She said she was sitting back there and e-mailing the principal how I was teaching or something. I'm like, there's nothing wrong with the way I teach.

---

[50] See Warren v. Volusia Cnty., Florida, 188 Fed. Appx. 859, 863 (11th Cir. 2006) ("An employee's failure to request a reasonable accommodation is fatal to the prima facie case; the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citations and quotation marks omitted); Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999) ("We have previously held that a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.").

[51] Pl.'s Resp. Br., Ex. 31.

I don't – she was – and then for them to take her side over my side, that's exactly what I explained to him, it was wrong. And I wanted to go to a different school. I wanted out of there.[52]

In response, the Plaintiff first argues – citing the Eleventh Circuit's decision in United States v. Hialeah Hous. Auth.[53] – that "a plaintiff need not mention the ADA or use the magic word 'accommodation' or phrase 'reasonable accommodation.'"[54] In Hialeah, the Eleventh Circuit explained:

> Although we have not determined precisely what form the request must take . . . some of our sister circuits have addressed what qualifies as an adequate demand under the ADA. For example, the Tenth Circuit has explained that under Title I of the ADA a plaintiff need not use magic words, but should provide enough information about his or her *limitations* and *desires* so as to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company.[55]

Here, the Plaintiff's e-mail was not insufficient merely because it failed to use certain "magic words." As noted, the e-mail – which was just over ten words long – did not even mention the Plaintiff's disability and the attendant limitations, nor did it mention a particular position that she believed would be more suitable. Thus, it fails to satisfy the standard approved of in Hialeah.

---

[52]   Cole Dep., at 93.

[53]   418 Fed. Appx. 872, 876 (11th Cir. 2011).

[54]   Pl.'s Resp. Br., at 34.

[55]   Hialeah, 418 Fed. Appx. at 876 (internal quotation marks omitted) (emphasis added).

The Plaintiff then argues that her e-mail was sent right after she had been placed on leave, thus Bartlett should have known that it was a request for a reasonable accommodation.[56] This argument fares no better. As Bartlett pointed out in his deposition, a teacher may request a transfer for many reasons.[57] Given that the Plaintiff provided no further information in her e-mail – much less an explanation for how a transfer would help accommodate her disability – a reasonable person in Bartlett's position would not have known that the Plaintiff was requesting a transfer as a reasonable accommodation under the ADA. Indeed, when the Plaintiff finally did make a clear reasonable accommodation request on June 19, 2013, the Defendant granted it.[58] Accordingly, because there is no genuine dispute of fact concerning a critical element of the Plaintiff's claim, the Defendant is entitled to judgment as a matter of law.

---

[56] Pl.'s Resp. Br., at 36-37.

[57] Bartlett Dep., at 53-56.

[58] Def.'s Statement of Facts ¶¶ 167, 171.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Defendant's Motion for Summary Judgment [Doc. 40].

SO ORDERED, this 10 day of September, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge